Our first case is appeal number 23-1208. Mr. Terry, whenever you're ready. Thank you. Good morning, judges. May it please the court. Todd A. Terry on behalf of the appellant. This is a case that results on appeal from a grant of summary judgment in the Eastern District of Wisconsin. I'll try to be concise in my comments given the limited time. A couple of key provisions I want to hit on. First being the First Amendment and the first issue of protected activity. The Wisconsin Safer at Home Order that was in effect at the time the mayor of the City of Racine denied this grant based upon my client's travel to Madison to attend an open Wisconsin rally. That was invalidated in its entirety. There will be argument that it was invalidated on administrative grounds, but it was never of effect. It had retroactive application. At the time of the rally, though, it was still a law in effect, correct? It was, Judge Pryor. And so what is the protected activity that Dennis engaged in? The protected activity? He traveled to the capital for the open Wisconsin rally to be heard and to be seen, frankly. He was understated in his time there. I will give you that. He did speak on camera at a local television station out of Milwaukee, referencing the harm that the order essentially was causing to small businesses of which he and his wife are owners. Was he there as an observer, as a participant? What was the argument that he made below as to why he was there? I would say you'll see within the record reference to an observer. You'll also see within the record reference to the fact that he, I don't want to say voices displeasure, but raised the issue of the harm to small businesses and that it was unfair. I would tell you from my standpoint. To that reporter, he made the representation that he thought the law was unfair? Or did he say that I can see both sides and I'm here as an observer? He could see both sides, but his concern was the harm it was causing to small businesses. I think he even referenced the differences between Walmart and his, him and his wife's small import shop, if you will. So I think. So Mr. Terry, suppose a police officer had arrested him in Madison for being in violation of that order. The order did authorize criminal sanctions, right? It did. So suppose the police officer had arrested him and a few weeks later, the Wisconsin Supreme Court invalidates the order. Would he have a damages claim against the officer for unlawful arrest? I don't know that he would probably clearly would not. The answer is clearly no. And so why is, why should the answer be any different here? Well, here he's denied based on a single purpose. That's a single political purpose of traveling to this rally. I would tell you in this record that's surrounded by frankly, years of animus between him and the mayor. And it's that single issue that the mayor focused on for his COVID enforcement, COVID regulations. And quite frankly, out of all the grant applicants, the only one grant applicant to be reviewed, reviewed for COVID compliance were my clients. Well, he was much more public than the others, right? That's true. I would tell you at the time that City of Racine, the City of Racine was very aggressive with their COVID regulations. They had daily monitoring going on through their health department. They had compliance that was being monitored on a daily basis. Obviously, as the pandemic grew, it became problematic. Let's suppose, let me vary the facts here. Let's suppose we had a Black Lives Matter demonstration in Madison and the judge had issued an injunction prohibiting it. And your client goes in violation of that injunction, is arrested or goes on the news as he did. And the city then decides, well, we don't think that's behavior we want to encourage. And then later on, it's determined that the injunction was invalid. Still, would it be a similar constitutional problem? I probably have to admit that Judge Hamilton, yeah, I think it is. And yet the Supreme Court tells us that people have to obey court orders, right? Correct. Walker against Birmingham. You can even be convicted even if the injunction is later thrown out as unconstitutional. Correct. So, I'm having trouble seeing how we give retroactive effect to a decision that was over and done before the Wisconsin Court made its order. We're not talking about criminal sanctions. We're just talking about a decision the day before to deny money. Correct. And I think in context, and this probably doesn't answer your question, but we're dealing with an order that was issued by a secretary-designee from the state of Wisconsin. I know with the... And people were expected to follow it, right? Until the Supreme Court struck it down. Correct. Can you help us out, Mr. Terry, with who the right plaintiffs are for each of your claims? Certainly. Because at one point in your reply brief, you say, Dennis is just an employee. And the rest of your claims all seem to be based on not distinguishing among him, his wife, and the LLC. So, what we have, just for some overview, the Dimples Fine Imports LLC or Dimples LLC is the entity that applied for the grant, operates the business. The sole member of Dimples LLC is Dimples Navratil, 100% owner, and Dennis Navratil, her husband. We know their roles. Help us out with the law. Okay. My position is the LLC suffered harm that directly flowed down to Dimple and by rights of marital property and by rights of intimate association to Dennis. So, if somebody breaches a contract with the LLC, Mr. and Mrs. Dimple have individual claims? No, I think... No, of course not. The contract claim, to me, is different. I mean... Why? First amendment claim here where we have intimate association cited at Adler versus Pataki, also Kane versus Teagard, where you have action from the government upon a party, in this case, Dennis. He's the one that suffers adverse action. Actually, he's the one that triggers the adverse action to the LLC. And as the state of Wisconsin opined in marks, the LLCs are different. They're different than corporations. They're a creature of state statute. And they certainly receive different treatment. They haven't been around that long, obviously. But the court recognized that with pass-flow or pass-through income losses and the fact that single-member LLCs, when a member suffered a harm, excuse me, it's really a harm that flows from that LLC to that member. Dennis is not a member of the LLC. I couldn't hear you. I'm sorry. He is not a part of the LLC. He's a manager of the store. I would assert he has a marital property right. He has an intimate association right, I believe, under existing case law. Under the first amendment retaliation claim, there has to be protected activity that he engaged in, adverse action taken against him for engaging in that activity. And that's where I think we're trying to thread the needle. It's there for threading, frankly. I mean, when we look at both the Adler case and the Cain case, we talk about that close familial association, harm that spurs from one to the other. So here, the wrath of the mayor of the city of Racine is directed at Dennis Navratil. Dimples LLC pays the price, despite being recommended by everyone, frankly, as the most I guess the best recipient of grant funds. The city administrator, who you've seen, Jim Palahniuk, was adamant about it, adamant about why they didn't get it. But that loss flowed directly to Dimple and Dennis, you know, by that close familial relationship, by the marital relationship. And what about Dimple? I'm sorry. Go ahead. I'm sorry. What protected activity did Dimple engage in? She did not. She did not. My argument as to her, and I'm going to address the waiver argument in a minute as well, but my argument as to her, again, comes back to Adler and that close, intimate association, husband and wife. If we look at it through the lens of Mark's Wisconsin Supreme Court decision on LLCs, again, a creature of state statute, we can see where there is harm that reaches Dimple. Harm that her husband's activities, based upon the mayor's decision, spurned. Mr. Terry, can I ask you a question about the permitting process here? There's no dispute that the rally was denied a permit. There was no permit for the rally, and there's no challenge to the permitting process. You didn't challenge the Wisconsin permitting process. Did not. Under your theory, protected activity here, anybody, apply for a permit, permit's denied. Let's say for a parade. You apply for a permit for a parade, the permit's denied, and we're going to have the parade anyway. The hell with the permit process. We've already had the parade. Police arrest everybody or cite everybody for blocking traffic. Everybody brings a First Amendment retaliation claim and says, well, I have a First Amendment protected activity right to engage in whatever I was there for, for the parade. There was an adverse activity. It was clearly caused by my participation in the parade. I can sue under First Amendment retaliation. Doesn't that eliminate the permitting process or the effect of the permitting process altogether? Shouldn't there be some requirement before you can say you engage in protected activity that you either challenge the constitutionality of the permitting process or you go to court and challenge the denial of the permit. You just can't ignore the fact that there's no permit and then sue under the First Amendment. Here, and it's coming back to what Judge Hamilton took me to task on. It really comes to that safer at home order. Right, but OK, that so that make that I thought you might say that. But here's the problem with that. I think that means that the clerk in the parks and recreation department in the city or the town where the permit is sought has to make a decision on the constitutionality of the reason or the basis for denying the permit. You know, you go to a town and you ask for a permit for some crazy thing. The town clerk is just going to look and say there's an ordinance that prohibits this permit denied. The town clerk is going to make no judgment on the constitutionality of the ordinance. You have to challenge the ordinance. So you go to court, you challenge the denial of the permit, saying that the permit was denied on an unconstitutional basis because the ordinance was unconstitutional. Can't just avoid or ignore the fact that there was no permit. This probably does not answer the question, but if we go back and look at the actual permitting process here, I would note there were no arrests. There were no enforcement activity. There was nothing. Well, probably because people were dying in the streets. I mean, this was April of 2020, right? Or I mean, this is when was the when was the rally? April 24 of 2020. This is right in the I mean, this is I mean, we're the world is in a total crisis and on April 24, 2020. And so the fact that there was no arrest, what difference does that make? I mean, I would tell you it speaks to, I guess, enforcement. I just may speak to good judgment. Maybe I can't argue. Okay, you're into your rebuttal time, but you had a lot of rebuttal times. I just want you to do whatever you want. You can keep going. I'll reserve. Okay, well, actually, there are issues that ought to be addressed in your opening. And in particular, I'd like to talk to you about Mr. Navratil's defamation claim. You've made a good deal about the difference between Windpoint and Racine, arguing that the mayor's comments about him returning to Racine were false and defamatory. Are there any hospitals in Windpoint? That's my knowledge, maybe a clinic or something. No. Any doctor's offices? I don't know that. No. So if Mr. Navratil had been exposed and infected when he attended this rally, he would have presumably wound up seeking medical care, most likely in Racine, right? I can't argue with that. Okay. I have a little trouble with your assertion in the brief that his attendance at the rally posed no threat or risk of harm to anyone other than himself. So at a time when all of us were being told to isolate and flatten the curve on demands on the health care system. Okay. Let me just check quickly a couple other notes. Let's see. I do need to ask you what you think your equal protection claim adds to your First Amendment claim. What it adds to it? Yes. I mean, here what we have is not only a politically charged decision from the mayor, Dennis Navratil attended the Open Wisconsin Rally, denied him, denied Dimples the grant. Outside of that, it's just not a restatement of the First Amendment claim as all these other restatement cases are. It really encompasses animus outside of that. It encompasses years of animus, not just political animus. I'm sorry, James Palahniuk addressed some of that in his deposition. He did, but I want to ask you about that because if this were, let's say, a sex or race or national origin discrimination case in employment, having somebody else in management say, as well, politics or race or sex or national origin played a role, does not get you past summary judgment. You've got to have some specific evidence, not just somebody's speculation. So what do we have here? So what we have is Palahniuk working with the mayor for two years on a near daily basis, Palahniuk having discussions with him about political issues, Palahniuk having an understanding from him about discussions with him about his political leanings, his political knowledge in the area. So somebody who works closely with a manager at a factory knows that he's a white male, right? That doesn't let him say, well, I think that was a racist decision or a sexist decision. It's not evidence that gets you to a jury. If you look at the totality of Palahniuk's testimony, I mean, he worked with the mayor on a regular basis. What's the most specific evidence you have from Palahniuk of political motivation? I think the first time the mayor addresses Dimples and Dennis Navratil in, it would be in one of their committee meetings, he made the statement, they are not getting a grant if I have anything to say about it. And what was the context of that? Well, that would have been one of their committee meetings. I'm sorry, I don't have the specific site for that. And that was about the second round of grants, which is being decided a couple of weeks after the rally. Correct. Okay. Thank you. If you want to save the rest of your time for rebuttal, thank you. I'll reserve. Thank you. Mr. Cohen. May it please the court. I have the honor of representing the appellees in this case. I'd like to, and I think the panel has already addressed this. We have constitutional claims and we have the state law defamation claim. The constitutional claims arise out of the mayor's decision to deny the grants. The defamation claim arises out of his expression of why he did so in a press statement. In answering those issues, we have to look at the context of both Dennis's conduct and Mayor Mason's actions. We can't just look at it as if a Black Lives Matter rally occurs tomorrow. As the panel has already recognized, Dennis attended this rally in April. We're not even two months into the pandemic. There was no known cure, no effective treatment, no vaccine at the time. And he did so when a valid at the time order was in place, which prohibited two things that are relevant here. One, his attendance. And two, at a mass gathering. And two, his travel from Racine, he says, wind point. But on the wind point issue, before I get past that, look at the complaint. The complaint, he identifies himself as living in Racine. Both in the caption and in the complaint itself.  But so he traveled for non-essential travel under that order. Secondly, the city of Madison denied the permit for the rally as they had the right to do administratively if the event posed a safety risk. There can be no doubt on this record that a mass gathering in April posed a safety risk and that's why the permit was denied. The rates of COVID-19 were increasing sharply. After this rally, the next day the Department of Health said we had a spike of 304 cases in Madison after the rally. And that's public record from the state website. This was a competitive process. There were more applications, there was money available. Mr. Cohen, could I ask you, how would this case be different if the city had made its decisions two days after the Wisconsin Supreme Court's order? I don't think it would be any different. Maybe one of the prongs for the reasonableness of Mayor Mason's actions is taken away. But the permit was denied. And Mayor Mason's testimony in this case, which is clear from his deposition, was that he was basing his decision on the unsafe conduct. There can be no doubt that traveling at that point in time with or without an order that's valid in place, which it was at the time and was reasonable for him to rely on, was unsafe conduct. And going to Judge Pryor's point, Dennis went out of his way in his affidavit in this case to say he was a mirror observer. And it's not just that statement alone, but then he also said in his affidavit that he stood behind the crowd. He wasn't there to protest. He testified in his affidavit that he saw the issues both ways. He testified that he wore a mask. He wasn't there for First Amendment expression. He was there, as he said in his affidavit, point blank to see what was going on. So he wasn't there for protected activity in the first place. There is no protective activity for Dennis for two reasons. First, he didn't engage in protected speech. He was a mirror observer. There was a comment to the TV reporter. But that was not the basis for Mayor Mason's decision to deny the grant funds. He didn't say, I'm denying the funds because Dennis said that the stay-at-home order was bad for small businesses. That wasn't the basis. It was the harmful conduct in going to a mass gathering that early in the coronavirus. And that argument was waived anyway. It wasn't raised in the first brief. It's forfeited. Secondly, there were two at the time, lawful time, place, and manner restrictions in place. And this goes to your question, I think, Judge Hamilton. First is the safer-at-home order. Sure. Palm threw it out later in time for an administrative reason because the administrator didn't have the authority to create that order. Only the governor did. But that doesn't mean that it was unreasonable at the time for Mayor Mason to rely upon it in judging Dennis's conduct. And secondly, the rally was in effect. These are both two content-neutral and content-neutral restrictions. And there can be no question that they served a significant public interest at the time, which is public health. So being reasonable as to time, place, and manner, they render whatever claimed right he has as a protected right, which is not based on the evidence of the record in his affidavit, to be non-protected activity. And this court's decision in ERPC 2 fully supports that. And the court there held in Elim that attending a church service was not such that it was a compelling—the restriction was a compelling need to safeguard the public health during a pandemic. Same is true of both of these restrictions. So there's no protected activity. On top of that, even if there was, National Endowment and Camelot Banquet Rooms both tell us—and Camelot Banquet Rooms is from this court, of course—that what we're looking at here is a denial of a subsidy. So even if he could meet protected activity, which he does, and Dimples clearly does it—I think my opponent admitted that—this is a subsidy. There's no rigorous scrutiny under the First Amendment, and courts have recognized that mayor-masons of the world have great latitude when administering funds. You'd agree it's not unlimited, however. It is not unlimited, correct. He can't decide—no Catholics or no Republicans get grants. Correct. And he can't discriminate on the basis of viewpoint. But he did. There's nothing in the record that suggests that the funds were denied because of Dennis's viewpoint, whether it's Dennis showing up at the rally. He didn't protest, so it couldn't have been that. It was the conduct of going to the rally in the first instance. Also, there was no adverse action, as Judge Pryor indicated. There was no adverse action for either one. The proper party to have brought this claim did bring this claim. It was Dimples LLC. And there was a motion to dismiss, which was granted, and that decision was not appealed. That is— Wait, wait, wait a second. You seem to be suggesting there's some consequence for not appealing an interlocutory dismissal order of one claim? There's a consequence in the sense that the First Amendment claim belongs, if to anyone, to Dimples LLC. Mr. Terry told you there's this familial relationship, and Dimples is a member of an LLC. Well, Dennis's claim is two steps removed, right? So even if you recognize that Dimples had a right as a member of an LLC, which is not supported by the law—the law that they're citing, too, the Marks decision from the Wisconsin Supreme Court, as Judge Hamilton suggested, doesn't stand for the proposition that a member of an LLC has a right against a third party for anything—tort, constitution, contract, whatever it is. It only stands for the proposition that a member of an LLC who has flow-through rights can sue another member of an LLC for breach of fiduciary duty. We don't address that, though, if we don't find that Dennis engaged in protected activity, right? Correct. Or Dimples, which was conceded she did not. Right. We don't even get to that issue. Was your point, though, that Dimples LLC has not—the issue has not been brought before us whether or not Dimples LLC has, if the court was correct in dismissing their First Amendment retaliation claim or its First Amendment retaliation claim? My point is that there is no adverse action to either Dennis or Dimples. The only hypothetical adverse action would be to Dimples LLC, and that claim's gone. So there's no one who has standing who had an adverse action against them who is before you on that issue. That is my point. And I think the Cain case, which the opposing counsel relies upon, actually helps me. Because in Cain, the court made clear that the minor has his own claim, and the parents had their own claim because even though their claim was initially dismissed, there was an accurate complaint that identified the adverse action to them. But what the court also made clear was the minor can't bring a derivative claim on behalf of his parents. They have their own claim. He's got his own claim. He can't bring a derivative claim. What appellants are asking you to do is recognize derivative claims from Dimple, who had no protected activity as a member only, which is not supported by any case law, and by Dennis, one step removed. So Dennis is really no different than the son not being able to bring a derivative claim in Cain. He can't bring that claim on behalf of his parents. Dennis can't bring it on behalf of Dimple, who doesn't have rights to bring it in the first place because she didn't engage in protected activity. And she doesn't have standing. She's just a member of the LLC. I think we can dispense with the equal protection claim pretty readily. This court has recognized time and time again in Boyd and Grasbaum that equal protection does not provide a remedy for retaliation. And opposing counsel was asked head on, aren't you really, I'm paraphrasing, aren't you really bringing a retaliation claim? There is nothing about that claim that's different, the equal protection claim, than the First Amendment claim. It's exactly the same argument. And as the district court correctly said, Dimple's LLC brought that claim, it was dismissed, and now it's just repackaged as an equal protection claim. So we don't even have to get to the arguments with respect to animus. But I do want to make this point. Twice during oral argument, opposing counsel said, there's a great record here of political animus for many, many years. There is nothing in the record to support that at all. He is relying almost entirely on Jim Palahniuk's statement that he thought the mayor's decision was politically motivated. But when I asked him on cross-examination, do you know whether or not the mayor knew Dennis's political affiliation? He said, I guess I presume, but I really don't know. That is pure speculation. And speculation cannot defeat summary judgment. I'll move on to the due process, 14th Amendment claims. This is interesting to me, how the arguments of appellant have evolved on appeal, district court on appeal. Initially, they identified their fundamental right in the district court as a property right to the grant funds. Of course, that can't be the case, because they weren't entitled to the grant funds, of course. And then in the initial brief before you, they argued it was a protected liberty right in operating their business. And of course, the business didn't go out of business. A mere threat of going out of business is not a liberty right. And then in the reply brief, in response to our arguments in that regard, they make an property interest in corporate goodwill, made for the first time in the reply brief. Well, there's no support that they lost any goodwill. And that argument was forfeited, because it can't be raised for the first time in a reply brief. There's no basis for it. So procedural and substantive due process are not met here. There is an argument, oh, we can get around the necessity of having competitors, because the conduct here of Mayor Mason shocks the conscience. That's a baseless argument. The mayor made a judgment call during the early onset of COVID to not allow grant funds, which are designated specifically to help small businesses deal with COVID, to someone who's not following the COVID rules and travels across the state and attends a mass gathering. There's nothing unreasonable in any way about that decision. And it certainly doesn't shock the conscience of the court. On the defamation claim, there is nothing defamatory here, for at least four reasons. One, the statements that Mayor Mason made in his press release were true or substantially true. Dennis does live in the Racine area. Dennis did return to that area. His comments about reckless behavior and that Dennis jeopardized public health, well, those are his pure opinions. There can be no doubt about it when someone says, whether it's me talking about a colleague or you talking about a colleague, you know, someone's acting recklessly because they're not following the law. They're going to do something that's in violation of the law. That's my opinion. That was his opinion. And there can be no doubt that the conduct did jeopardize public health. The Department of Health gave a notice the next day and said there was a spike of 314 individuals. That was the largest single-day leap in the history of Wisconsin at that time. And the claim is also barred by fair comment. Mayor Mason was asked the question, why did you deny the grant? He gave his answer. It made sense. It was a fair comment statement. And then lastly, he's got governmental immunity. He could decide not to give a press statement about his decision and let Dennis play it out in the press because he started it by making a press statement. Or he could make a press statement. And he did. And under Wisconsin law, 893.80.74, Wisconsin Supreme Court has said that we're going to broadly interpret this. And there's very limited exceptions. The only exception that was raised by my opponent was that the conduct was malicious, willful, and intentional. There's absolutely no evidence for that. The mayor made factually true or substantially true statements of his own opinion, his expressions of why he denied the grant. And those reasons were his opinions. On behalf of my clients, your honors, I would like to thank you for taking your time and considering our cases today. Okay, thank you, Mr. Cohen. Mr. Terry. Just briefly, as this is a de novo review of summary judgment, some pertinent facts. I know they're in the record, but they're important. And quite frankly, Dimples LLC was and is the longest serving business in the city of Racine out on the Main Street Corridor. Repeatedly receives awards for their services. Very active in the community. Jim Palahniuk, Matt Redjick, Director of City Development, I believe it is, were involved in this grant process committee. And both of them advocated to the strongest extent that Dimples received these funds. Redjick went into the mayor's office after the mayor said, I'm not giving them any money and said, you need to give them money. They're deserving. Palahniuk testified they're the most deserving applicant there is. There's only one applicant in this entire process who was singled out for COVID restriction compliance, if that makes sense. And it was my clients. The mayor, again, was daily, you're subject to daily monitoring of compliance issues within the city of Racine. His own health department was doing that on a daily basis. He awarded grant funds to numerous applicants that, number one, didn't meet the criteria that the mayor himself put forward in the distributed materials for the grant application. They'd be current in your taxes. You had to be open and in business for a six-month period. No licensing or permitting issues within the city of Racine. A number of those applicants received maximum awards of grant funds. The most deserving didn't, and that's my clients. We're here asking that the decision on summary judgment be reversed and that it be remanded for a trial to the court. Thank you. I thank you, Mr. Terry. That case will be taken under advisement.